UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORI WILLIAMS, o/b/o J.M.B., a minor child,<br><br>            Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>            Defendant. | CASE NO.   C05-5095RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 30, 2005 |

Plaintiff, J.M.B., a minor, has, through his mother, Lori Williams, brought this matter for judicial review of the denial of his application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is nine years old.[1] Tr. 32. He has no past work experience. Tr. 18. Through his mother plaintiff protectively filed an application for SSI benefits on August 31, 2001, alleging disability as

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

of October 24, 1999, due to diabetes mellitus. Tr. 16, 18, 32, 64. That application was denied initially and on reconsideration. Tr. 32-34, 41. Plaintiff requested a hearing, which was held on July 31, 2003, before an administrative law judge ("ALJ"). Tr. 253. At the hearing, plaintiff's mother, represented by counsel, appeared and testified. Tr. 253-272.

On October 23, 2003, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1) at step one of the disability evaluation process for determining eligibility for SSI benefits for a minor, plaintiff had never engaged in substantial gainful activity;

(2) at step two of that process, plaintiff had a "severe" impairment consisting of insulin dependent diabetes; and

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, nor were they functionally equivalent in severity to any impairments listed therein.

Tr. 24-25. Plaintiff's request for review was denied by the Appeals Council on December 2, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 416.1481.

On February 3, 2005, plaintiff filed a complaint in this court seeking judicial review of the ALJ's decision.[2] (Dkt. #1). Specifically, plaintiff argues that the decision should be reversed and remanded for an award of benefits for the following reasons:

(a) the ALJ failed to give appropriate weight to the opinion of his treating physician and nurse practitioner;

(b) the ALJ failed to properly consider the testimony of plaintiff's mother;

(c) the ALJ failed to properly consider the lay witness evidence in the record; and

(d) the ALJ erred in not finding plaintiff's impairment to be functionally equivalent to any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

For the reasons set forth below, however, the undersigned finds the ALJ properly determined plaintiff to be not disabled, and thus recommends the court affirm the ALJ's decision. While plaintiff also has requested

---

[2] As indicated, plaintiff's complaint was filed more than sixty days after the Commissioner issued her final decision. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 404.982, 416.1481, 416.1482. This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will deal with this matter on its merits.

REPORT AND RECOMMENDATION
Page - 2

oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  Sequential Evaluation Process for Determining a Minor Claimant's Eligibility for SSI Benefits

For a claimant who is under the age of 18, the Commissioner will consider that claimant disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. To be disabled, the impairment or combination of impairments thus must be medically determinable, that is they "must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(a)(1).

Notwithstanding the presence of a medically determinable impairment, however, if the claimant is engaging in "substantial gainful activity," he or she will not be found disabled. 20 C.F.R. §§ 416.906, 416.924(a). At step one of the sequential evaluation process, therefore, the Commissioner must determine whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the claimant is not engaging in such activity, the Commissioner then moves on to step two of the evaluation process. 20 C.F.R. § 416.924(a).

At step two of that process, the Commissioner must consider whether the claimant has a "severe" impairment. 20 C.F.R. § 416.924(a), (c). An impairment is not severe if it is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. §

416.924(c). If the impairment is severe, then, at step three, the Commissioner must determine whether it "meets, medically equals, or functionally equals" any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. § 416.924(a), (d). If the claimant has such an impairment, and it "meets the duration requirement" noted above, disability will be found. 20 C.F.R. § 416.924(a).

In determining whether a minor claimant is disabled, the Commissioner will consider "all of the relevant evidence" in the record, including information from medical and other sources, such as therapists, parents, teachers and other people the claimant knows. 20 C.F.R. § 416.924a(a). The Commissioner thus "will not consider any single piece of evidence in isolation" or "rely on test scores alone." 20 C.F.R. § 416.924a(a)(1)(ii). In evaluating the ability to function, the Commissioner looks at whether the claimant can do the activities other children the claimant's age can do, how well the claimant does those activities, and how much help is needed from family, teachers or others. 20 C.F.R. § 416.924a(b)(2)(i).

II. The ALJ Properly Assessed the Medical Evidence in the Record

In late April 2003, plaintiff's treating nurse practitioner, Elizabeth Babler, A.R.N.P., completed a child functional capacity assessment form. On that form, Ms. Babler checked a box indicating plaintiff had an "extreme" limitation in the functional domain of health and physical well-being. Tr. 181. In addition, she provided the following more specific comments regarding plaintiff's impairment:

> Child has Type 1 DM that needs constant adult supervision. He is unable to provide his own care. He is unable to recognize low blood sugar which can lead to seizures, unconsciousness or death if not treated immediately. He needs to have his blood sugar checked 5-10 times per day. He needs 4-6 injections of insulin per day. He needs an adult who is knowledgeable about diabetes care to be watching him at all times.

Tr. 181-82. It appears that one of the physicians who has treated plaintiff, Dr. Martin A. Goldsmith, co-signed the form completed by Ms. Babler, although the record does not include a copy of the form which contains his signature. Tr. 179-83, 255-56.

    A.    Ms. Babler Is Not an "Acceptable Medical Source"

Plaintiff argues the ALJ failed to explain what weight he was giving to this evaluation form. He asserts that because that form was co-signed by Dr. Goldsmith, it should be treated as the opinion of an "acceptable medical source," as that term is defined in the Social Security Regulations. See 20 C.F.R. § 416.013(a), (d); Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (acceptable medical sources include licensed physicians, not nurse practitioners); 20 C.F.R. § 416.913(a), (d). The opinions of those who are

not acceptable medical sources may be given "less weight" than the opinions of those who are. Gomez, 74 F.3d at 970-71. The Ninth Circuit in Gomez, however, went on to make the following finding:

> Moreover, 20 C.F.R. § 416.913(a)(6) states that "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence," while later in that section the statute designates nurse practitioners as an "other source." § 416.913(e)(3). While nowhere in the regulations is the term "interdisciplinary team" expressly defined, a plain reading of these sections taken together indicates that a nurse practitioner <u>working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not</u>.

Id. at 971 (emphasis added). Plaintiff argues Ms. Babler and Dr. Goldsmith were such an interdisciplinary team, and thus together constituted an acceptable medical source. The undersigned disagrees.

In Gomez, because the nurse practitioner in that case consulted with the claimant's family physician regarding the claimant's treatment "numerous times over the course of" her relationship with the claimant, "worked closely under the supervision" of the claimant's family physician, and "was acting as an agent of" that physician, the Ninth Circuit held that her opinion properly was considered part of the opinion of an acceptable medical source, even though the claimant's family physician did not personally examine the claimant during the relevant time period. Id. There is no indication though, that any of the above factors the Ninth Circuit found present in Gomez are present in this case.

There is little indication in the record that Ms. Babler consulted Dr. Goldsmith regarding plaintiff's treatment, or, to the extent the record shows that such consultation occurred, the nature or frequency of such consultation. See Tr. 120-28, 179-83, 185-87, 191-92, 196-97, 202-04, 210-11, 215-16, 219-20, 223-25, 227-35, 237. In addition, it appears that Dr. Goldsmith was not the only physician in charge of treating plaintiff, as Ms. Babler communicated with other physicians regarding her treatment as well. See Tr. 185-87, 202-04, 215-16, 219-20, 223-25, 227-29, 233-34. Thus, it is not at all clear that Ms. Babler in fact was "working closely under the supervision" of Dr. Goldsmith with respect to plaintiff's treatment or that she was acting as Dr. Goldsmith's agent in that regard. As such, the ALJ was not required to treat the opinion provided by Ms. Babler in late April 2003, as that of an acceptable medical source.

Nevertheless, her opinion constitutes lay witness evidence regarding plaintiff's symptoms, which "is competent evidence" the ALJ "must take into account," unless he "expressly determines to disregard" it and "gives reasons germane" for doing so. Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). The ALJ may discount such evidence if it conflicts with the medical evidence in the record. Id.; Vincent v. Heckler, 739

F.2d 1393, 1395 (9th Cir. 1984). In rejecting lay witness evidence, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing that evidence are noted. <u>Lewis</u>, 236 F.3d at 512. This is so even though the ALJ does "not clearly link his determination to those reasons," as long as substantial evidence supports the ALJ's decision. <u>Lewis</u>, 236 F.3d at 512. In addition, the ALJ may "draw inferences logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.

Here, however, the ALJ did give germane reasons for rejecting Ms. Babler's opinion that plaintiff had an extreme limitation in the functional domain of health and physical well-being. The ALJ analyzed that opinion and plaintiff's ability to function in this domain as follows:

> Ms. Babler has suggested that the claimant has extreme limitations in this area while the State Agency physicians found marked limitations. Clearly the claimant is significantly limited by his need for regular blood sugar checks and the need for insulin as well as the effect of his fluctuating blood sugars on his functioning. The evidence is fairly consistent. The claimant is able to attend a regular classroom, but his mother is frequently required to come to school and administer insulin. He must have his blood sugar checked up to fifteen times a day. He cannot spend the night at a friend's home or eat without his mother present to monitor what he must eat.
>
> The question is whether the limitations described above are marked or extreme. . . .
>
> The claimant is six years old. He needs frequent monitoring from his mother, but his mother does not stay at school to administer to his needs constantly, so the monitoring is not constant. He engages in normal child play. A normal six year old would be monitored fairly closely even if he had no impairment. He has to leave the classroom frequently to have his blood sugar monitored, but he is able attend a regular classroom. An evaluation of marked and extreme is a difficult evaluation to make, but the evidence suggests that the claimant does not have an extreme limitation that interferes "very seriously with his ability to independently initiate, sustain, or complete activities."

Tr. 23-24. As explained below, the substantial evidence in the record supports this analysis.

B.   <u>Step Three of the Sequential Evaluation Process</u>

At step three of the sequential evaluation process, the ALJ is required to evaluate the claimant's impairment or impairments to see if they meet, medically equal, or are functionally equivalent to any of those listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R §§ 416.924(a). The Listings consist of two parts: "Part A," which "contains medical criteria that apply to adult persons age 18 and over," and "Part B," which "contains additional medical criteria that apply only to the evaluation of impairments of persons under age 18." 20 C.F.R. § 416.925(b).

To determine whether a minor claimant has an impairment or impairments that meet any of those contained in the Listings, therefore, Part B is used first. <u>Id.</u> If the medical criteria in Part B do not apply,

REPORT AND RECOMMENDATION
Page - 6

then the medical criteria in Part A are used. Id.  With respect to Part B, "'listing-level severity' generally means . . . 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. Six such "domains" are considered in determining listing-level severity, which are as follows: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for" oneself; "and (vi) [h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1).

A claimant's impairment or impairments are deemed "medically equivalent" to an impairment in the Listings, "if the medical findings are at least equal in severity and duration" to the listed impairment. 20 C.F.R. § 416.926(a).  In making this determination, the Commissioner compares "the symptoms, signs, and laboratory findings" about the claimant's impairment or impairments with "the corresponding medical criteria" for the listed impairment or impairments. Id.  If the claimant's impairment or impairments are not described in the Listings, the Commissioner compares the medical evidence in the record with the criteria "for closely analogous listed impairments" to see if that evidence is "at least of equal medical significance to" the listed criteria. 20 C.F.R. § 416.926(a)(2).  Medical equivalence, however, must be based only on the medical evidence in the record, which must "be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.926(b).

If a claimant's impairment or impairments do not meet or medically equal any of those contained in the Listings, the Commissioner then determines whether his or her impairment or impairments functionally equal the Listings. 20 C.F.R. § 416.926a(a).  To functionally equal the Listings, the claimant's impairment or impairments "must be of listing-level severity," i.e., they must result either in marked limitations in two domains or an extreme limitation in one domain. Id.  In considering whether the claimant's impairment or impairments are functionally equivalent to the Listings, the Commissioner assesses what the claimant is unable to do, has difficulty doing, needs help doing, or is restricted from doing. Id.  The Commissioner also "will assess the interactive and cumulative effects" of all of the claimant's impairments. Id.

The Commissioner will find a "marked" limitation in a domain if the claimant's impairment or impairments interfere "seriously" with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).  A marked limitation also means "a limitation that is 'more than moderate' but 'less than extreme.'" Id.  Further, marked limitation will be found when the claimant has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations,

on a comprehensive standardized test designed to measure ability or functioning" in the particular domain, and the claimant's "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(d)(2)(iii).

The Commissioner will find an "extreme" limitation in a domain if the claimant's impairment or impairments interfere "very seriously" with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation also is one that is "'more than marked.'" Id. As with a marked limitation, an extreme limitation additionally will be found if the claimant has "a valid score that is three standard deviations or more below the mean on a standardized test designed to measure ability or functioning" in the particular domain, and the claimant's "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

With respect to the sixth domain, "[h]ealth and physical well-being," the Commissioner also may find the claimant has a marked limitation if the claimant is "frequently ill" due to his or her impairment or impairments, which result in "significant, documented symptoms or signs." 20 C.F.R. § 416.926a(e)(2)(iv). The term "frequent" means:

> [E]pisodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more[,] . . . [or] episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

Id. An extreme limitation in this domain may be found if the claimant is "frequently ill" because of his or her impairment or impairments, which "result in significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation" in 20 C.F.R. § 416.926a(e)(2)(iv). 20 C.F.R. § 416.926a(e)(4)(iv).

In determining whether a claimant has a marked or extreme limitation, the Commissioner "will not rely on any test score alone." 20 C.F.R. § 416.926(e)(4)(i). That is, "[n]o single piece of information taken in isolation" will establish that the claimant has a marked or extreme limitation in a domain. Id. Instead, the Commissioner will consider the claimant's "test scores together with" other information concerning the claimant, such as classroom performance and the observation of others. 20 C.F.R. § 416.926(e)(4)(ii). The Commissioner thus may find there is no marked or extreme limitation, even if the claimant's test scores are at the requisite level, if other information in the record shows that the claimant's "functioning in day-to-day

activities is not seriously or very seriously limited." 20 C.F.R. § 416.926(e)(4)(ii)(B).

### C. Substantial Evidence in the Record Supports the ALJ's Determination

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

As discussed above, Ms. Babler opined that plaintiff had an extreme limitation in the domain of "[h]ealth and physical well-being," due to his need for "constant adult supervision" regarding care for his diabetes mellitus. Tr. 181. However, while Ms. Babler saw plaintiff every couple of months for a period of a year or so, in general she described him as "healthy appearing" and found his diabetes mellitus to be in "fair" to "good" control. Tr. 185-87, 191-92, 196-97, 202-04, 210-11, 215-16, 219-20, 223-25, 227-35, 237. The diagnostic notes from Dr. Goldsmith's treatment of plaintiff, also fail to show much in the way of serious functional limitations resulting from his condition. Tr. 120-28.

While the record indicates plaintiff has visited the emergency room on a few occasions (Tr. 135-37, 142, 144, 155), no other medical source in the record found plaintiff to have an extreme limitation in the domain of health and physical well-being. Dr. Robert G. Hoskins, a non-examining consulting physician, did find plaintiff to be markedly limited in that domain. Tr. 170. This, however, is insufficient to establish plaintiff's diabetes mellitus meets, equals or is functionally equivalent to any of the Listings. 20 C.F.R. §§ 416.925(b)(2), 416.926(a), 416.926a(a). Dr. Roger Meyer, the medical expert who testified at the hearing, furthermore, did not feel plaintiff met, equaled or was functionally equivalent to any impairment contained in the Listings. Tr. 256-57.

Although it is true that Dr. Hoskins and Dr. Meyer are non-examining physicians, their opinions are not inconsistent with the diagnostic notes of either Dr. Goldsmith or Ms. Babler, all of which, as discussed above, support the ALJ's determination. Thus, while it also may be true that Dr. Goldsmith is a specialist in pediatrics and/or endocrinology, and even if the undersigned were to attribute the opinion provided by Ms. Babler to him as well, none of his treatment records supports a finding that plaintiff has an extreme limitation in the domain of health and physical well-being. Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (more deference given to opinion of specialist about medical issues related to his or her area of specialty); Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately

REPORT AND RECOMMENDATION
Page - 10

supported by clinical findings).

III. <u>The ALJ Did Not Err in Considering the Testimony of Plaintiff's Mother or the Other Lay Witness Evidence in the Record</u>

Plaintiff argues the ALJ failed to properly consider the testimony of his mother, asserting that such testimony should be evaluated under the legal standard similar to that applicable to claimants in cases such as this involving claimants who are under the age of 18. However, plaintiff cites to no legal authority for this proposition, nor is the court aware of any. Further, the undersigned notes that no matter how close the relationship between plaintiff and his mother, at most she can provide testimony only with respect to what she has observed regarding plaintiff's symptoms. In other words, it is not possible for plaintiff's mother to actually testify as the claimant. Accordingly, the ALJ's evaluation of her testimony will be reviewed under the standard applicable to lay witnesses, as outlined above.

In any event, the ALJ found the testimony of plaintiff's mother to be "essentially credible." Tr. 24. Plaintiff argues that because the ALJ did not reject her testimony, which showed he required constant adult supervision, the ALJ also should have found he was extremely limited in the domain of health and physical well-being, and therefore that he was disabled. The undersigned disagrees. While it seems, based on the testimony of plaintiff's mother, that plaintiff has required extensive supervision in caring for his diabetes mellitus, resulting in frequent blood sugar checks, significant missed classroom time, and limitations on his ability to engage in activities of daily living (Tr. 19, 261-66, 268-71), the ALJ appeared to recognize and, indeed, adopt many, if not all, of these restrictions (Tr. 23-24). The undersigned, however, cannot say that the ALJ erred in determining those restrictions to be "marked" rather than "extreme."

As the ALJ stated, the determination of whether a claimant's limitation or limitations are "marked" or "extreme" is a difficult one to make. Tr. 24. Nevertheless, it is the ALJ's sole responsibility to evaluate the medical and other evidence in the record and make this determination. See <u>Reddick</u>, 157 F.3d at 722; <u>Sample</u>, 694 F.2d at 642; <u>Morgan</u>, 169 F.3d at 601. Where that evidence admits of more than one rational interpretation, such as here, furthermore, the court should not conduct its own evaluation of the evidence, but must uphold the Commissioner's decision. <u>Allen</u>, 749 F.2d at 579. Accordingly, the undersigned does not find that the ALJ erred in evaluating the testimony of plaintiff's mother.

Plaintiff also argues the ALJ failed to state what weight he was giving to the statements his teacher made regarding his ability to function. Plaintiff's teacher stated that he missed a lot of class time because of

his varying blood sugar levels and his need to spend a lot of time in the school nurse's office. Tr. 111, 117. It is true the ALJ failed to state what weight he was giving to his teacher's statements. However, the undersigned finds such omission to be harmless. See Batson, 359 F.3d at 1197 (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error). As discussed above, while plaintiff's mother also noted that he missed a lot of class time, the ALJ did not err in finding this, and the other significant restrictions his diabetes placed on him, resulted in a "marked" rather than an "extreme" limitation in the domain of health and physical well-being.

IV.   The ALJ Properly Found Plaintiff's Impairment Was Not Functionally Equivalent to Any of The Impairments Listed in 20 C.F.R. Part 404, Subpart P, Appendix 1

Lastly, plaintiff argues the ALJ erred in failing to find that he had an "extreme" limitation in the domain of health and physical well-being, that his diabetes mellitus was functionally equal to the Listings, and therefore that he was disabled, based on the opinion evidence of Dr. Goldsmith and Ms. Babler, the testimony of his mother, and the statements of his teacher. The undersigned, however, has dealt with each of these issues, rejecting plaintiff's arguments, and finding, as discussed above, that the ALJ did not err in evaluating such evidence, and thus in determining plaintiff to be not disabled.

CONCLUSION

Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 30, 2005**, as noted in the caption.

DATED this 5th day of December, 2005.

Karen L. Strombom
United States Magistrate Judge